# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| CRIMSON JOHNSON, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )    Case No. 4:20-cv-00560-SGC |
| | ) |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | ) |
| | ) |
|    Defendant. | ) |

## MEMORANDUM OPINION[1]

The plaintiff, Crimson Johnson, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Doc. 1).[2] Johnson timely pursued and exhausted her administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C §§ 405(g) and 1383(c)(3). For the reasons discussed below, the Commissioner's decision is due to be affirmed.

---

[1] The parties have consented to the exercise of full dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 8).

[2] Citations to the record refer to the document and page numbers assigned by the court's CM/ECF electronic filing system and appear in the following format: (Doc. __ at __). Citations to the transcript use page numbers assigned by the Commissioner to the record and appear as follows: (Tr. at __).

## I.     Procedural History

Johnson completed the twelfth grade and has no past relevant work history.[3] In her application for DIB and SSI, Johnson alleged she became disabled on August 22, 2016, as the result of a variety of physical and mental impairments. (Tr. at 10, 297). After her claims were denied, Johnson requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 10, 151). Following a hearing, the ALJ denied Johnson's claims. (*Id.* at 10-28). Johnson was twenty-seven years old when the ALJ issued the decision. (*See Id.* at 26, 101). After the Appeals Council denied review of the ALJ's decision, that decision became the final decision of the Commissioner. (*Id.* at 1-6); *see Frye v. Massanari*, 209 F. Supp. 2d 1246, 1251 (N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). Thereafter, Johnson commenced this action. (Doc. 1).

## II.    Statutory and Regulatory Framework

To establish eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

---

[3] While Johnson has worked in the past as a caregiver, waitress, cashier/host, food preparer, and deboner, because Johnson has not performed any work long enough for her to learn how to do it, and the work she performed did not amount to substantial gainful activity, the ALJ found the plaintiff does not have past relevant work. (Tr. at 26, 329-336, 384); *See* 20 C.F.R. §§ 404.1565, 416.965.

twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). Furthermore, a claimant must show she was disabled between her alleged initial onset date and her date last insured. *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 831 (11th Cir. 2011) (citing *Moore v. Barnhart*, 405 F.3d 1209, 1211 (11th Cir. 2005); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)). The Social Security Administration ("SSA") employs a five-step sequential analysis to determine an individual's eligibility for disability benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Id.* at §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in substantial gainful activity, the Commissioner will find the claimant is not disabled. *Id.* at §§ 404.1520(a)(4)(i) and (b), 416.920(a)(4)(i) and (b). At the first step, the ALJ determined Johnson meets the SSA's insured status requirements through December 30, 2020, and has not engaged in substantial gainful activity since August 22, 2016. (Tr. at 12).

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe

impairment or combination of impairments, the Commissioner will find the claimant is not disabled. *Id.* at §§ 404.1520(a)(4)(ii) and (c), 416.920(a)(4)(ii) and (c). At the second step, the ALJ determined Johnson has the following severe impairments: seizure disorder; panic disorder; major depressive disorder; and specific learning disorder. (*Id.* at 13).

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment or combination of impairments meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairment or combination of impairments meets or equals one of the Listings, the Commissioner will find the claimant is disabled. *Id.* at §§ 404.1520(a)(4)(iii) and (d), 416.920(a)(4)(iii) and (d). At the third step, the ALJ determined Johnson does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listings. (Tr. at 14-17).

If the claimant's impairment or combination of impairments does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e). At the fourth step, the Commissioner will compare an assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* at §§ 404.1520(a)(4)(iv) and (e), 416.920(a)(4)(iv)

and (e). If the claimant is capable of performing her past relevant work, the Commissioner will find the claimant is not disabled. *Id.* at §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Before proceeding to the fourth step, the ALJ determined Johnson has the following RFC:

> To perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except she can frequently reach overhead bilaterally; frequently balance, stoop, kneel, crouch, crawl, or climb ramps and stairs. She should avoid exposure to vibrations and hazards due to a seizure disorder. She can understand, remember, and carry out simple 1-2-3 step instructions and attend to simple, repetitive tasks for two-hour periods. She could tolerate occasional interaction with the public and co-workers. Changes in the workplace should be simple, well explained and occur no more than occasionally.

(Tr. at 17). At the fourth step, the ALJ determined Johnson had no past relevant work. (*Id.* at 26).

If the claimant is unable to perform her past relevant work, the Commissioner must finally determine whether the claimant is capable of performing other work that exists in substantial numbers in the national economy in light of the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and (g)(1), 416.920(a)(4)(v) and (g)(1). If the claimant is capable of performing other work, the Commissioner will find the claimant is not disabled. *Id.* at §§ 404.1520(a)(4)(v) and (g)(1), 416.920(a)(4)(v) and (g)(1). If the claimant is not capable of performing other work, the Commissioner will find the claimant is

disabled.  *Id.* at §§ 404.1520(a)(4)(v) and (g)(1), 416.920(a)(4)(v) and (g)(1).

At the fifth step, considering Johnson's age, education, work experience, and residual functional capacity, the ALJ determined there are jobs that exist in significant numbers in the national economy that Johnson can perform, such as those of general office clerk, inspector/tester, and packer/packager.  (Tr. at 26-27).

### III.  Standard of Review

Review of the Commissioner's decision is limited to a determination of whether that decision is supported by substantial evidence and whether the Commissioner applied correct legal standards.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  A district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  Rather, a district court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted).   Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.*  It is "more than a scintilla, but less than a preponderance."  *Id.*  A district court must uphold factual findings supported by substantial evidence, even

if the preponderance of the evidence is against those findings. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV. <u>Discussion</u>

On appeal, Johnson asserts four errors: (1) the ALJ improperly rejected the opinions of Dr. June Nichols; (2) the ALJ erred in holding that Johnson's daily activities diminish the persuasiveness of her allegations; (3) the ALJ improperly drew adverse inferences from lack of medical treatment; and (4) the ALJ's decision was not based on substantial evidence. (Docs. 12, 15).

### A. **Evaluation of Medical Opinions**

Johnson first argues the ALJ improperly rejected the opinions of Dr. Nichols, a psychological consultative examiner. (Doc. 12 at 21). Specifically, Johnson asserts the ALJ cannot substitute her judgment for that of medical and vocational experts and that in repudiating the opinion of Dr. Nichols, the ALJ failed to state the grounds of her decision with at least some measure of clarity. (*Id.* at 23). In

support of her arguments, Johnson block quoted the entirety of the ALJ's summary and analysis of the opinions of Dr. Nichols, and bolded the portions related to Johnson's reported seizure disorder. (Doc. 12 at 21). Additionally, Johnson cites to a Seventh Circuit case, *Wilder v. Chater,* wherein the court reversed and remanded a denial of benefits when the ALJ rejected the opinion of an expert appointed by the ALJ. 64 F.3d. 335, 337-38 (7th Cir. 1995). Relevantly, the *Wilder* court opined it considered "with a degree of suspicion the administrative law judge's decision to go against the only medical evidence in the case, that of a psychiatrist not retained by the applicant but appointed by the administrative law judge himself to advise on Wilder's condition." *Wilder,* 64 F.3d at 337. Johnson argues the standard applied in *Wilder*, which has been applied in other Eleventh Circuit cases, is applicable here. (Doc. 12 at 21-24). However, Johnson fails to provide any argument as to how the ALJ improperly assessed Dr. Nichols's evaluation. *See Id.* Further, the ALJ clearly articulated her findings related to Dr. Nichols's report and opinion. (Tr. at 23-24).

Current regulations provide specific factors are to be considered when evaluating the persuasiveness of medical opinions and prior administrative medical findings. 20 C.F.R § 416.920c(a). When determining the weight to give the opinion of a physician, an ALJ considers numerous factors, including whether the physician examined the claimant, whether the physician treated the claimant, the evidence the physician presents in support of his or her opinion, and whether the physicians

8

opinion is consistent with the record as a whole. *Id*; *see* 20 C.F.R. § 416.927(c). Further, ALJs are required to articulate how medical opinions were considered. *See Sharaz v. Bowen,* 825 F.2d 278, 279 (11th Cir. 1987) (The ALJ is required to "state with particularity the weight he gave different medical opinions and the reasons therefor."). Moreover, it is not the role of this court to reweigh the evidence. *See Dyer*, 395 F.3d 1206, 1210 (11th Cir. 2005).

Dr. Nichols, a licensed psychologist, performed an evaluation of Johnson on November 29, 2016. (Tr. at 514). Upon conducting the evaluation, Dr. Nichols diagnosed Johnson with panic disorder; major depressive disorder, recurrent and moderate; specific learning disorder with impairment in reading comprehension; amphetamine use disorder, 61 day remission; opioid use disorder, 61 day remission; seizure disorder; and history of at least two TBIs. (*Id.* at 516). Dr. Nichols concluded Johnson could see significant improvement over the next 12 months is good if she continued to stay clean. (*Id.* at 517). She also noted the following:

> The medical evidence of record provided by DDS were reviewed and those findings were considered in the overall assessment of the patient. Ms. Chambers[4] suffers symptoms of a panic disorder, as well as depression that appears to be moderate at this time. She has 61 days of clean time since she has used any chemicals. Prior to that time she reported having used multiple. Her ability to respond to supervision, to coworkers and to work pressures in a work setting did not appear impaired, however, the uncontrolled seizure disorder would be of concern because of the loss of consciousness and confusion as they

---

[4] Crimson Johnson's last name at the time of the evaluation was "Chambers." Her married name is now "Johnson."

>occur. She did not demonstrate deficits which would interfere with her ability to remember, understand and carry out work related instructions. However, again the seizure disorder could cause significant problems until the seizures are fully under control. She is able to handle her own funds and to live independently with the assistance of her fiancé.

*Id.*

In her decision, the ALJ provided a detailed summary of Dr. Nichols's report related to the evaluation of Johnson. (*Id.* at 23-24). In addition to providing a summary of Dr. Nichols's findings, the ALJ noted she afforded some weight to Dr. Nichols's opinion and articulated that she relied on her opinion only to the extent it was consistent with the evidence in the record. (*Id.* at 23). The ALJ further stated that, despite Dr. Nichols's opinion that Johnson was able respond to supervision, to coworkers, and to work pressures, she accommodated Johnson's complaints of difficulty being around others in the RFC. *Id.* Finally, the ALJ noted the record does not support that Johnson's seizures would cause a significant limitation in her mental work abilities as suggested by Dr. Nichols. *Id.* In support of this finding, the ALJ referenced the record, which provides no evidence of Johnson having any documented seizure activity from the alleged onset date through February 2019. *Id.* As noted by the ALJ, while Johnson sought emergency care for "near syncopal episodes" in February 2019, the ALJ found it was unclear whether this activity was caused by her self-medication of CBD oil in an attempt to cease smoking. (*Id.* at 22, 687). At the time of her February 8, 2019 visit to Gadsden Regional Medical Center,

her diagnosis was syncope with a chief complaint of "syncopal episodes after increasing her vaporized CBD oil dose." (*Id*. at 687).

Additionally, Johnson's examination findings were normal during primary care visits at Quality of Life and emergency department visits, where Johnson reported a history of seizure activity. (*Id.* at 23, 547, 559-60, 690, 702). These normal findings included: normal eye, verbal and motor response; normal orientation, intact cranial nerves, normal sensation, range of motion, and strength throughout; no tenderness; intact extraocular movements; regular heart rate and rhythm; lungs clear to auscultation; and normal cephalic and atraumatic head. *Id.* Related to her seizure complaints, Johnson's treaters at Quality of Life instructed Johnson to take medication to control her seizures. (*Id.* 547, 560). Doctor's notes from a December 30, 2016 visit to Quality of Life reflect Johnson was using Lamictal for treatment of her seizure disorder "with good results." (*Id.* at 555). Accordingly, the ALJ properly articulated her reasons for assigning particular weight to the opinions of Dr. Nichols.

Moreover, in addition to Dr. Nichols's opinion, the ALJ also reviewed Johnson's medical records as a whole and articulated her reasoning for the weight assigned to each opinion. (Tr. 22-23). The ALJ further clarified weight was assigned in accordance with the degree to which opinion's were supported by, and consistent with, the evidence submitted. *Id.* In sum, because the ALJ properly

evaluated and weighed the medical opinion evidence in this case and properly articulated the reasons for her findings, Johnson's first argument is without merit.

### B. Daily Activities

Second, Johnson asserts the ALJ erred in holding that her daily activities diminish the persuasiveness of her allegations. In determining Johnson's RFC, the ALJ carefully considered the entire record, including Johnson's reported daily activities. (Tr. at 17-25). Specifically, the ALJ found Johnson's reported activities of daily living further diminished the persuasiveness of her allegations, which necessarily include those related to pain. (*Id.* at 22). The ALJ noted that Johnson testified she was able to do laundry, sweep floors, and shop irregularly. (*Id.* at 22, 88). The ALJ further noted Johnson submitted a written report, which was completed by her then boyfriend, which indicated she was able to care for her cat, manage her personal care, prepare meals, clean, do laundry, ride in a car, leave home, shop in stores and by phone, manage her finances, watch television, spend time with others, and go out to eat. (*Id*. at 22, 318-325).

Johnson argues the ALJ's finding that her reported daily activities diminished the persuasiveness of her allegations was contrary to the holding in a recent Eleventh Circuit matter, *Schink v. Comm'r of Soc. Sec.,* 935 F.3d 1245 (11th Cir. 2019). (Doc. 12 at 27). In *Schink*, the court found the plaintiff's daily activities, which were mostly, if not all, solitary activities, did not discount the treating physician's

opinions that the plaintiff suffered from significant mental impairments, particularly when he interacted with others. 935 F.3d at 1264. Johnson further argues that limited daily activities do not preclude disability, citing to *Early v. Astrue*, 481 F. Supp. 2d 1233, 1238-1239 (N.D. Ala. 2007) ("The ability to perform the limited daily activities noted by the ALJ does not rule out the presence of disabling pain"). (Doc. 12 at 27).

The defendant argues the *Schink* case is factually dissimilar to the matter at hand. (Doc. 14 at 14-16). This court agrees. Unlike the facts in this case, which as a whole support the ALJ's finding Johnson was not disabled, in *Schink* the plaintiff suffered from diagnosed bipolar disorder and had an extensive history of mental health treatment with specialists, including a voluntary hospitalization of one week, and complained of inability to work with others. 935 F.3d at 1253-55. Accordingly, in *Schink,* the record as a whole did not provide substantial evidence the plaintiff was not disabled. *Id.*

The Eleventh Circuit has stated it does not believe "participation in everyday activities of short duration, such as housework or fishing, disqualifies a claimant from a disability . . . ." *Lewis v. Callahan* 125 F.3d 1436, 1441 (11th Cir. 1997). When a claimant attempts to establish disability through his own testimony of pain or other subjective symptoms, the pain standard articulated by the Eleventh Circuit

in *Holt v. Sullivan*, 921 F.2d 1221 (11th Cir. 1991), applies. *Dyer*, 395 F.3d at 1210; *see also* SSR 96-7p.

> The pain standard requires "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."

*Dyer*, 395 F.3d at 1210 (quoting *Holt*, 921 F.2d at 1223); *see also* SSR 96-7p. Provided the *Holt* pain standard is met, an ALJ considers a claimant's testimony of pain or other subjective symptoms. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *see also* SSR 96-7p.

An ALJ is permitted to discredit a claimant's subjective testimony of pain or other symptoms if he "clearly 'articulate[s] explicit and adequate reasons'" for doing so. *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1561-62); *see also* SSR 96-7p. "A clearly articulated credibility finding with substantial supporting evidence will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562. In determining credibility, an ALJ may consider objective medical evidence and a claimant's reported daily activities, amongst other things. 20 C.F.R. §§ 404.1529(c), 416.929(c); *see also* SSR 96-7p.

Here, as noted by the ALJ, her decision was not based solely on Johnson's ability to carry out daily activities but rather relied on an evaluation of the evidence

14

as a whole. (Tr. at 17-25).[5] In sum, because the ALJ articulated in detail her findings that Johnson's daily activities diminish the persuasiveness of her allegations and substantial evidence supports her finding, Johnson's second argument fails

### C. Lack of Medical Treatment

Johnson next argues the ALJ improperly drew adverse inferences from Johnson's lack of medical treatment. Specifically, Johnson block quotes a portion of the ALJ's decision relating to her evaluation of Johnson's RFC. (Doc. 12 at 28). That portion of the ALJ's decision is as follows:

> There is **no evidence of mental health treatment before or after these emergency department visits and inpatient care other than primary care at Quality of Life Services.** In fact, Quality of Life Services records documents her care only from August through December 2016 with a **subsequent significant gap in treatment until her return in February 2019**. Progress notes show that the claimant had **complaints of depression with symptoms such as decreased need for sleep, depressed mood, diminished interest or pleasure, feelings of guilt, loss of appetite, poor judgment, irritability, nausea, trembling and racing thoughts, denying any aggravating factors**. (citations omitted, emphasis in Johnson's brief).

(*Id.*; Tr. at 19-20). Johnson also asserts that the ALJ's inferences from the lack of medical evidence resulted in an adverse decision even though the claimant explained she had no insurance and no income. (Doc. 12 at 28). In the portion of the ALJ's decision analyzing the opinions of Dr. Nichols related to Johnson's seizure disorder,

---

[5] Notably, Johnson's daily activities were determined from her own testimony and a report submitted by Johnson which was completed by her fiancé. (Tr. 88, 318).

15

the ALJ noted that emergency department records and Quality of Life records show that Johnson was non-compliant with her anti-seizure medication regimen. (Tr. at 23); *See* 20 C.F.R. §§ 404.1529(c)(3)(iv)-(v), 416.929(c)(3)(iv). At her hearing, Johnson testified her non-compliance was due to her inability to afford her medications in over two years. (Tr. at 23, 66-67, 543, 547). However, she testified she has been back on her medication since she went back to Quality of Life. (*Id.* at 62). The ALJ further noted that while financial constraints may make medical intervention and compliance more difficult, a lack of health insurance does not equate to a finding of disability, and that the ALJ found Johnson had failed to exhaust efforts to seek treatment, with no visits to free or subsidized clinics evidenced. (Tr. 23-24, 66, 68).

As noted by Johnson in her brief, "noncompliance with a prescribed treatment regiment does not prevent a claimant from receiving benefits where noncompliance is the result of an inability to afford treatment." *McCall v. Bowen*, 846 F.2d 1371, 1319 (11th Cir. 1998). However, while non-compliance alone based on the inability to afford treatment is not sufficient cause to deny disability, here, the ALJ's decision was not based solely on Johnson's non-compliance; rather, the medical evidence overall did not support Johnson's allegations. (Tr. 21). Further, as noted above, Johnson testified she was complaint with her medication following a return to Quality of Life Services. (Tr. at 62).

Johnson additionally argues the ALJ failed to properly develop the record. (Doc. 12 at 29). ALJs are charged with developing a full and fair record. *Todd v. Heckler,* 736. F.2d 641, 642 (11th Cir. 1984). In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole, including "(1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and corroborated by (a spouse) . . . ; and (4) the claimant's age, education, and work history." *McCloud v. Barnhart*, 166 F. App'x 410, 417 (11th Cir. 2006) (quoting *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)). A claimant bears the burden of proving she is disabled and, consequently, is responsible for producing evidence in support of her claim. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *see* 20 § C.F.R 416.912(a),(c). This is because a claimant is in the best position to inform the ALJ as to her treatment history and, by failing to do so, fails to meet her burden. *McCloud* 166 F. App'x at 418.

Specific to development of the record, Johnson argues the ALJ failed to ask any follow-up questions and thus failed to develop the record on the issue. (Doc. 12 at 29). While not made clear in her brief, it appears Johnson is arguing that the ALJ failed to ask follow-up questions related to Johnson's complaints of seizures. However, at her hearing, the ALJ asked Johnson about treatment related to her seizures and confirmed her treatment was at Quality of Life. (Tr. at 62). Further,

the ALJ performed a comprehensive review of Johnson's records from Quality of Life and articulated her findings related to the same. (Tr. at 20-21). Finally, the ALJ also asked Johnson about her physical disabilities other than seizures, as well as her mental disabilities, and addressed the reported issues based on the evidence received from Johnson. (Tr. at 17-26, 62-64). Therefore, the ALJ did not fail to properly develop the record.

Here, the ALJ properly considered Johnson's treatment history together with the other evidence submitted, including evidence from Johnson's treatment at Quality of Life, emergency room visits, and the evaluations performed by Dr. Nichols, Dr. Amason, and Dr. Iyer. (Tr. 17-26). Further, the ALJ did not err in failing to develop the record as she properly questioned Johnson about her treatment and reviewed all records and evidence submitted by Johnson in support of her complaints. Accordingly, Johnson's third argument fails.

### D.   **Substantial Evidence**

Finally, Johnson contends the ALJ's unfavorable decision was not based on substantial evidence. (Doc. 12 at 29). In support of this assertion, Johnson first reasserts the preceding arguments that: (1) the ALJ disregarded the Commissioner's psychological expert, Dr. Nichols; (2) the ALJ wrongly relied on daily activities; and (3) the ALJ wrongly drew adverse results from lack of medical treatment. *Id*. For the reasons discussed above, the court finds these arguments to be without merit.

Johnson also raises an additional argument that the ALJ relied on vocational expert ("VE") testimony that was not based on a correct or full statement of Johnson's limitations and impairments. *Id.* In particular, Johnson argues "the hypothetical question ignored the limitations as expressed by the Commissioner's examining psychological expert." (Doc. 12 at 29). Johnson also asserts "(w)hen the VE considered all of Claimant's limitations, he testified there was no work Claimant can perform." *Id.*

In order for the testimony of a VE "to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 12918, 1227 (11th Cir. 2002); *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir.). However, an ALJ's hypothetical need not include findings the ALJ has properly rejected as unsupported. *See Crawford*, 363 F.3d at 1161; *Phillip v. Barnhart*, 357 F.3d, 1232, 1240-41 (11th Cir. 2004).

As already discussed, the court finds the ALJ reviewed the opinion of the Commissioner's examining psychological expert, Dr. Nichols, and properly articulated her reasons for assigning specific weight to Dr. Nichols's opinions. Further, the ALJ's decision related to Johnson's disability was rendered after reviewing the record as a whole and is supported by substantial evidence. Therefore, the ALJ was not required to include opinions of Dr. Nichols, which were properly rejected, in her hypothetical.

Moreover, Johnson's final argument – that when considering all of the claimant's limitations, the VE testified there was no work she could perform -- is a misstatement of the hearing testimony. At the hearing, Johnson's counsel asked what level of absenteeism is generally tolerated for the hypothetical jobs identified by the VE as jobs Johnson could perform and what level of off-task behavior is allowed in unskilled work. (Tr. at 71). In response, the VE provided absenteeism of one day per month on a consistent basis precludes all work and five percent off-task behavior would be allowed. *Id.* While not plainly stated, Johnson appears to argue this response by the VE is cause for remand. However, as noted above, the hypothetical posed by the ALJ was proper; thus, Johnson's argument has no merit. The ALJ was not required to consider the VE's testimony related to impairments that were properly rejected based on substantial evidence.

## V.   Conclusion

Having reviewed the administrative record and considered all of the arguments presented by the parties, the undersigned find the Commissioner's decision is supported by substantial evidence and in accordance with applicable law. Therefore, that decision is due to be **AFFIRMED**. A separate order will be entered.

**DONE** this 31st day of August, 2021.

_Staci G. Cornelius_
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE